**EXHIBIT 10**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MURASHEA "MIKE" BOVELL,

               Plaintiff,                          15 Civ. 08594 (CS)

   -against-                                  **DECLARATION OF**
                                                           **MURASHEA BOVELL**

CITY OF MOUNT VERNON, New York,
Commissioner TERRANCE RAYNOR,
Individually and in his Official Capacity,
Deputy Commissioner RICHARD BURKE,
Individually and in his Official Capacity,
Captain MICHAEL GOLDMAN, Individually
and in his Official Capacity, Sergeant ROBERT
WUTTKE, Lieutenant PAUL NAWROCKI,
Individually and in his Official Capacity,
and "JOHN DOES 1-10"
               Defendants.
-------------------------------------------------------x

      Murashea Bovell, under the penalty of perjury, herein declares pursuant to 28 U.S.C. §1746, that:

      1.     I am the Plaintiff in the above-captioned matter, a black male police officer employed by the City of Mount Vernon (the "City") as a Patrol Officer with the Mount Vernon Police Department.

      2.     I submit this Declaration in opposition to the Defendants' Motion for Summary Judgment.

      3.     I have read the Plaintiff's Local Rule 56.1 Counterstatement of Facts. The information contained therein attributed to the deposition of Sergeant Jennifer Carpenter is information that I have known while working in the Department and which contributed to my

1

claims of racial discrimination, hostile work environment and retaliation in the Mount Vernon Police Department.

4. I have read the Declaration of Patrick Jean-Jerome. The information contained therein is information that I either had personal knowledge of or learned of through Detective Jean-Jerome and/or other officers in the Department and which contributed to my claims of racial discrimination, hostile work environment and retaliation in the Mount Vernon Police Department.

5. In July 2013 and December 2013, I requested a transfer from the Narcotics Unit to the Patrol Division. My basis for requesting a transfer was not for family reasons and a better schedule, but because of the hostile, racially discriminatory, disparate, and corrupt environment that existed in the Narcotics Unit under Sgt. Fegan and Det. Antonini. (Ex. 6; Ex. 8).

6. I provided alternative reasons for my transfer request on the MV-5 because I feared that I would be retaliated against for reporting racial discrimination, disparate treatment and corruption in the Department.

7. By transferring from the Narcotics Unit to the Patrol Division on January 1, 2014, I suffered a financial loss of overtime opportunities, the change in assignment was a "demotion" in that I went from working in a detective capacity to being a patrolman, I was denied the opportunity to receive my detective shield on January 3, 2014 along with several other officers, which would have constituted a formal promotion with an increase in pay, the detective title and a detective shield.

8. When Defendant Wuttke assumed the position of Patrol Sergeant in February 2014, he had not received any training to become a supervisor. Defendant Wuttke had no supervisor training when he purported to evaluate my work performance in April 2014.

9. I have reviewed the documents identified as "Exhibit BB" (Plaintiff's Ex. 22) annexed to the defendants' motion for summary judgment and maintain that the Department's referral of officers to the supervision of Disability Management Associates is retaliatory and used to harass black officers, officers who report discrimination, harassment, and misconduct, as well as officers who are disliked by the white administration, as borne out by the following:

    a. Officer Allison Allen is a black officer. Upon information and belief, she was subject to harassment by the Department administration.

    b. Officer John Campo is white, but he informed me that he was retaliated against and harassed for being in the military and taking military leave, that he was forced to bring a lawsuit against the Department because of the Department's harassment, and that he was out of work for approximately 3 years without pay as a result of the Department's refusal to grant 207-c benefits.

    c. Sam Varghese is a black officer.

    d. Daniel O'Grady is white and the husband of Officer Arlet Lee (a black female officer). Officer O'Grady as very outspoken in the Department against injustices taking place therein.

    e. Arlet Lee is a black female officer married to Officer O'Grady. I am informed that the white administration in the Department continuously retaliated against her and kept forcing her to return to work before her work-related injuries were healed.

    f. Everett Johnson is a black officer.

    g. Kenneth Rella is white and, I am informed, was disliked by the administration in the Department. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

3

h. Robert Delitta is white and I am informed that he was disliked by the Department administration because he brought legal action against the Department related to non-payment of wages.

i. Thomas Bendo is white ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

j. Christopher Gallagher is white. Gallagher's surgery was approved, and not subjected to delay as my surgeries were.

k. Montika Jones is a black female officer.

Detective Shields

10. I served in a detective capacity for 2 years, 7 months and 27 days as of January 1, 2014. (Ex. 7). Under New York Civil Service Law §58(4)(c)(ii), the Department should have awarded me a detective shield after 18 months of service in that investigative capacity and on or about November 3, 2012.

11. After I and Officer Briley (black) were transferred out of the Detective Division on January 1, 2014, other officers were awarded their detective shield. (Ex. 9).

12. Officer Montika Jones' promotion to detective was delayed past the statutory 18-month period. Like me, Det. Jones also intended to transfer out of the Detective Division, but was given information that if she remained, she would be awarded her detective shield in January 2014, so she remained in the Detective Division. On January 3, 2014, Det. Jones was awarded her detective shield after being assigned to the Detective Division since March 23, 2011- close to 3 years later. (Ex. 9; Ex. 23).

13. Officer McKennie was also awarded a detective shield on January 3, 2014. (Ex. 9). Officer McKennie served in a detective capacity for approximately 24 months. (Ex. 9). Officer McKennie received her detective shield after filing an action against the Department (the City) for retaliation she received from the Department's white administration for reporting ███ ████████████████████████████████████████████

14. Officer Bates (black) was promoted to detective after serving 18 months and 18 days. (Ex. 9). At the time that he was promoted, Officer Bates and his family had a close relationship with Mayor Davis and employees in City Hall.

15. Det. Antonini (white) was awarded his detective shield after only 1 year, 10 months and 24 days. (Ex. 9).

16. Defendant Wuttke was awarded his detective shield after only 1 year, 10 months and 24 days. (Ex. 9).

17. Det. Griffin (black) was awarded his detective shield after serving approximately 2 years and 9 months in a detective capacity. (Ex. 9).

18. On July 30, 2014, four (4) officers were awarded their detective shield: Darron Light (white) served in a detective capacity for less than 18 months; Jesus Garcia (Hispanic) served in a detective capacity for less than 18 months; Mark Symonette (white) served in a detective capacity for 1 year and 10 months; and Alec Francis (black) served in a detective capacity for 1 year, 2 months. (Ex. 9).

19. Like Det. Bates, Det. Francis (black) is friends with Mayor Davis and was hired because of that. Det. Francis experienced name calling from other officers throughout his career and has ridiculed and called names like "Uncle Tom". In and around 2013, Det. Francis confided

5

in me for help and counseling when mocked by his co-workers. Det. Francis, who is now in Internal Affairs, was part of the retaliation from the Department subsequent to my being out injured on a work-related injury. For example, Det. Francis and Lt. Lefferi (white) would drive to my home in Dutchess County from Mount Vernon and bang on my door simply to deliver a letter from defendant Goldman, which could have been emailed and/or faxed, and then attempted to force me to leave my home and get into their patrol vehicle to sign papers for the Department.

20. I am aware that when Det. Darron Light (white) was assigned to the Narcotics Unit, Sgt. Fegan allowed him to leave work early to go bowling with Captain Adinaro (white). ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

21. It is my understanding that Captain Adinaro (white) received his detective shield after serving in a detective capacity for only 12 months.

22. It is my understanding that Det. DeBarro (white) received his detective shield after serving in a detective capacity for 11 months.

23. It is my understanding that Officer Hunt (white) received her detective shield without ever working as a detective or investigator.

24. It is my understanding that Officer Capraro (white) received a detective shield after only 11 months in a detective capacity. (Ex. 9).

25. Officer Nicholas Smith (black) was assigned to the Detective Division, Narcotics Unit on February 25, 2014 (Ex. 9), but I am informed that he was not promoted to detective until after he served in that capacity for over 2½ years.

26. I filed a complaint with the EEOC in July 2014, without the advice of counsel.

6

27.     A mediation took place with the EEOC and an attorney from the City of Mount Vernon Law Department on November 7, 2014.  I was seeking my shield and an apology; I was not seeking monetary compensation, but the Department refused to award me a detective shield.

28.     The EEOC investigation continued past the mediation and on January 14, 2015, I was advised by the EEOC that I should send additional documentation and additional information related to my complaints against the Department to Investigator John Douglas, which I did.

29.     On January 15, 2015, I sent Investigator John Douglas a letter detailing my complaints against the Department, which included the Department refusing to award me a detective shield after 18 months of service, the discrimination against black officers in the Department by promoting less experience white officers over black officers, the fear of black officers to express their concerns about disparate treatment and discrimination out of a fear of retaliation, retaliation from Sgt. Fegan and other white supervisors for my leaving the Narcotics Unit due to the hostile work environment there, including several incidents of retaliation in March 2015 that I brought to the attention of Captain Hastings, defendant Goldman, Deputy Chief Dumser, Commissioner Raynor, and other officers, expressing my concerns about retaliation from my supervisors and requesting that it stop, retaliation from defendant Wuttke in the form of an unfair evaluation, the fact that I filed a complaint with the City's Human Resources Commissioner Judy Williams, informing Investigator Douglas that nothing was done.  (Ex. 26).

30.     I further detailed in my letter to EEOC Investigator Douglas that I was retaliated against by being removed from the Overtime list on July 28, 2014. (Ex. 26).

31.     I further advised EEOC Investigator Douglas that since September 9, 2014, I have been out of work on a work-related injury and that I fear that the Department "will continue to retaliate against me and possibly even attempt to stop my medical and 207-c benefits." (Ex. 26).

7

32. I attached copies of documents to my letter to EEOC Investigator Douglas. (Ex. 27).

33. It should also be noted that a few months after I returned to the Patrol Division in 2014, I was walking to roll call and passed Deputy Chief Dumser, who is white, in the hallway. Two other white officers and a black officer (Officer Hall) were also in the hallway at the time. With a casual nod, Deputy Chief Dumser said, "How you doin'?" I lightly replied, "Hangin' in there", to which Deputy Chief Dumser replied more firmly, "I don't see no rope" and kept walking. The other three officers in the hallway were visibly taken aback and gasped. Officer Hall was shocked and openly expressed his disbelief to myself and the other officers.

34. Officer Bailey (black) was adversely transferred from the Detective Division for calling a white supervisor racist (Lt. Manzione). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

I declare under penalty of perjury under the laws of the United States of America that the information above is true and accurate to the best of my knowledge and belief and where stated upon information and belief, I believe the same to be true and accurate.

Dated: July 24, 2017

_____
Officer Murashea Bovell